815 F.2d 219
 124 L.R.R.M. (BNA) 3193, 55 USLW 2561,
106 Lab.Cas. P 12,347,
38 Ed. Law Rep. 880
 CHRIST THE KING REGIONAL HIGH SCHOOL, Plaintiff-Appellant,
v.
Edward R. CULVERT, individually and as Chairman of the New
York State Labor Relations Board, John J. Fanning,
individually and as a member of the New York State Labor
Relations Board, New York State Labor Relations Board, an
agency of the Department of Labor of the State of New York,
Defendants-Appellees,
Lay Faculty Association, Local 1261, American Federation of
Teachers, AFL-CIO, Defendant-Intervenor.
 No. 787, Docket 86-7947.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 2, 1987.
Decided March 26, 1987.
 
 Roger S. Kaplan, New York City (Thomas P. Schnitzler, Philip B. Rosen, Jackson, Lewis, Schnitzler & Krupman, New York City, of counsel), for plaintiff-appellant.
 Evelyn Tenenbaum, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, Lawrence S. Kahn, Deputy Sol. Gen., New York City, of counsel), for defendants-appellees.
 Before PIERCE, ALTIMARI, Circuit Judges, and STEWART, Senior District Judge.*
 PIERCE, Circuit Judge:
 
 
 1
 Christ the King Regional High School ("the School") appeals from an order of summary judgment in favor of the New York State Labor Relations Board, et al. ("SLRB" and "the SLRB defendants"), and the Lay Faculty Association, Local 1261, American Federation of Teachers, AFL-CIO ("LFA" or "the Union"). The district court dismissed the School's complaint which sought to enjoin the SLRB from asserting jurisdiction over a labor dispute at the School.
 
 
 2
 The School argues that exercise of jurisdiction by the SLRB would violate the first amendment of the United States Constitution, and, alternatively, that the National Labor Relations Act ("NLRA"), 29 U.S.C. Sec. 151 et seq. (1982), preempts the SLRB from exercising jurisdiction. The SLRB defendants assert that an exercise of jurisdiction by it would not violate the first amendment, that the NLRA does not preempt SLRB jurisdiction, and that the district court should have abstained from determining the issues on the merits.
 
 
 3
 We hold that the NLRA does not preempt the SLRB from exercising jurisdiction over the labor dispute at the School and that the district court should have abstained from determining the first amendment issues on the merits.
 
 BACKGROUND
 
 4
 The facts herein are not in dispute.
 
 
 5
 Christ the King Regional High School is a secondary school affiliated with the Roman Catholic Church; it is located in Queens County. The School has an enrollment of approximately 1800 pupils and the curriculum includes both secular and religious subjects. In addition to the religiously affiliated staff, the School employs a lay faculty who comprise nearly ninety percent of the teachers employed by the school. With the exception of lay teachers employed to teach religious subjects, lay faculty are employed by the School without regard to their religious beliefs.
 
 
 6
 The lay faculty has been represented by the LFA since the School became regional in 1976.[1] Since that time, the LFA has negotiated three separate contracts with Christ the King. The last collective bargaining agreement between the School and the Union expired in 1981. At the beginning of the 1981-1982 school year, the teachers went on strike. The striking teachers were discharged and have not since worked for the School.
 
 
 7
 Between August 1979 and May 1982, the LFA filed four unfair labor practice charges against the School with the National Labor Relations Board ("NLRB"). The charges alleged that the School had violated: (1) Sec. 8(a)(1) and (5) of the NLRA, by failing to provide the Union with a copy of its pension plan; (2) Sec. 8(a)(1) and (5) of the NLRA, by unilaterally promulgating a calendar year establishing the days of work for the 1979-1980 school year; (3) Sec. 8(a)(1) and (5) of the NLRA by failing to provide to the Union a list of the names, addresses, salaries, and wages of bargaining unit employees; and (4) Sec. 8(a)(3) and (5) of the NLRA, by terminating striking teachers and refusing to bargain with the Union. The first three charges were settled, and the last charge was withdrawn. On March 26, 1984, the Regional Director of the NLRB closed the case "conditioned upon continued compliance with said Settlement Agreement" and "cautioned that subsequent violations of the National Labor Relations Act may become the basis for further proceedings in the instant case despite its formal closing."
 
 
 8
 In early 1982, the LFA filed an unfair labor practice charge with the SLRB, alleging that the School violated the New York State Labor Relations Act, N.Y.Lab.Law Sec. 701 et seq. (McKinney 1977) ("SLRA"), by refusing to bargain with, and discharging striking members of, the LFA. In addition to the LFA, 73 teachers who were discharged each filed individual charges with the SLRB, alleging substantially the same violations that the LFA raised.
 
 
 9
 In February 1982, the SLRB commenced an informal investigation of the unfair labor practice charges filed by the LFA. As part of the investigation, the LFA and School convened at a conference before the SLRB on February 23, 1982, to state their positions regarding the unfair labor practice charges. At the conference, the School stated its objection to the assertion of jurisdiction by the SLRB over the dispute. The School urged that an exercise of jurisdiction over the School by the SLRB would violate the Establishment and Free Exercise Clauses of the Constitution, and alternatively, that jurisdiction by the SLRB was preempted by the NLRA. Thereafter, on March 12, 1982, the School filed a memorandum formally stating its opposition to SLRB jurisdiction over the labor dispute at the School, to which the LFA filed an answering memorandum. After considering the arguments and memoranda, the SLRB concluded that it was not precluded from exercising jurisdiction over the labor dispute at the School and that LFA's unfair labor practice charges constituted a prima facie case. Therefore, on October 29, 1982, the SLRB issued and served an unfair labor practice complaint on the School with a notice scheduling a pre-hearing conference on the charges for December 7, 1982, and a hearing on December 17, 1982.
 
 
 10
 On December 1, 1982, the School moved before the SLRB to dismiss its complaint based on preemption grounds. At the pre-hearing conference, the School renewed its objections to SLRB jurisdiction; and, after the conference, moved to adjourn the December 17, 1982 hearing. On December 10, 1982, the School commenced this action in the United States District Court for the Southern District of New York against the SLRB, its chairman and a member. Thereafter, by order dated January 6, 1983, the SLRB denied the School's motion before it to dismiss the complaint and postponed the hearing "sine die until such time as the United States District Court for the Southern District of New York issues its decision in the action."
 
 
 11
 In the district court, the School moved for summary judgment pursuant to Rule 56; the LFA intervened and joined the SLRB defendants in their filing of a cross-motion for summary judgment. The district court denied the School's motion, granted the SLRB defendants' and LFA's cross-motion, and dismissed the complaint. 644 F.Supp. 1490. Although the SLRB defendants raised the issue of abstention in their answer as well as in a letter submitted to the court prior to the disposition of the case,[2] the district court declined to abstain and dealt with the issues on the merits. On the merits, the district court determined that the first amendment and preemption issues raised by the School were "identical" to those raised in Catholic High School Association of the Archdiocese of New York v. Culvert, 753 F.2d 1161 (2d Cir.1985), and therein found not to preclude SLRB jurisdiction over a church-affiliated school. Therefore, the district court dismissed the School's complaint.
 
 
 12
 On appeal, the School reasserts its first amendment and preemption arguments and further asserts that the district court acted properly in not abstaining from deciding the case on the merits. The SLRB defendants assert that the NLRA does not preempt SLRB jurisdiction over the labor dispute at Christ the King and that the district court should have abstained from dealing with the first amendment issues. We agree and affirm the dismissal of the complaint by the district court, however, we do so on the grounds set forth below.
 
 DISCUSSION
 I. Preemption
 
 13
 Appellant urges that because "Congress intended to and did vest in the [NLRB] the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause," the NLRA preempts the SLRA. See NLRB v. Reliance Fuel Oil Corp., 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963) (per curiam) (emphasis in original). Implicit in appellant's argument is the notion that the NLRA is all-pervasive and leaves no room for state legislation in labor law. We decline to adopt this reasoning. Indeed, it is clear that if the NLRA does not exert jurisdiction in a given area, the states can supplement the NLRA with state legislation. See Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Board, 315 U.S. 740, 746-50, 62 S.Ct. 820, 824-26, 86 L.Ed. 1154 (1942). In NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 506-07, 99 S.Ct. 1313, 1322-23, 59 L.Ed.2d 533 (1979), the Supreme Court stated that "in the absence of a clear expression of Congress' intent to bring teachers in church-operated schools within the jurisdiction of the [NLRB]," such teachers are not within the jurisdiction of the NLRB. Since the Supreme Court has held that the NLRA does not cover teachers in church-operated schools, we conclude that states are not preempted from regulating teachers in these schools.
 
 
 14
 The SLRA was originally enacted in 1937 and Sec. 715 specifically excluded "employees of charitable, educational, or religious associations or corporations" from coverage under the SLRA. 1937 N.Y.Laws, Ch. 443. However, since 1937, Sec. 715 has been amended several times, most recently to delete any reference to the exclusion of employees of charitable, educational and religious organizations from coverage under the SLRA. 1968 N.Y.Laws, Ch. 890. Governor Rockefeller, approving the amendment, stated that "the bill recognizes that it is no longer appropriate to distinguish between categories of employers with regard to the protection of these essential rights." McKinney's 1968 Session Laws, p. 2389. Thus, SLRB jurisdiction in this matter is authorized pursuant to a state statute.
 
 
 15
 We reject appellant's argument that Catholic Bishop of Chicago applies only to teachers at church-operated schools and that the schools themselves are subject to NLRB jurisdiction. In NLRB v. Bishop Ford Central Catholic High School, 623 F.2d 818, 819-20 (2d Cir.1980), cert. denied, 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981), we specifically held that the NLRB does not have jurisdiction over church-operated schools. Moreover, in Catholic High School Association, we noted that the NLRA does not preempt the SLRB from exercising jurisdiction over church-affiliated schools. 753 F.2d at 1165 n. 2. Indeed, "[t]he touchstone of the preemption doctrine is conflict, actual or potential, between two systems which regulate labor activity." C.J. Morris, The Developing Labor Law 1509 (2d ed. 1983). Here, the state is exercising jurisdiction in an area where the NLRB has no jurisdiction. Hence, since there is no conflict, no real preemption problem exists.
 
 
 16
 Appellant argues that the NLRB has exercised jurisdiction over the School even after Catholic Bishop of Chicago was decided. Prior to filing unfair labor practice charges with the SLRB, the Union filed four unfair labor practice charges before the NLRB. The NLRB investigated the charges and approved the withdrawal of one and the settlement of the others. We reject appellant's contention that these voluntary assertions of jurisdiction by the NLRB necessarily indicate that the NLRA preempts SLRB jurisdiction in this case. Catholic Bishop of Chicago and Bishop Ford support the conclusion that the NLRB does not have jurisdiction over church-affiliated schools and their lay faculties. An improper exercise of NLRB jurisdiction over a labor dispute between these parties does not preempt the proper exercise of jurisdiction by the SLRB. In the final analysis, it is for the courts, not the NLRB, to determine what Congress intended the scope of NLRB jurisdiction to be.
 
 
 17
 Accordingly, we affirm the judgment of the district court that the NLRA does not preempt the SLRB from exercising jurisdiction over church-affiliated schools.
 
 II. Abstention
 
 18
 Having decided that the exercise of SLRB jurisdiction in this matter would not be preempted by the NLRA, we now address whether the district court should have abstained from determining the first amendment claims on the merits. As a threshold matter, we find that the issue of abstention was before the district court.
 
 
 19
 The district court declined to abstain from determining the first amendment issues on the merits because it found that the abstention issue had not been "duly presented." The district court acknowledged that abstention was raised in the SLRB defendants' answer and in a letter to Judge Broderick regarding Ohio Civil Rights Commission v. Dayton Christian Schools, --- U.S. ----, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), but decided that the abstention issue was not properly before it because the claim was not raised in the moving papers or "urged in the argument with respect to these motions." We disagree with this determination and hold that the abstention issue was properly before the district court.[3]
 
 
 20
 In their answer to the School's complaint in the district court, the SLRB defendants' raised abstention as an affirmative defense. The abstention argument was again urged before the district court in a letter to Judge Broderick before he decided the cross-motions for summary judgment. It is not surprising that the SLRB defendants did not address their abstention defense in their cross-motion for summary judgment, and we certainly do not believe that this resulted in a waiver of the already-pleaded defense. The notice of cross-motion was dated October 22, 1985, only nine months after Catholic High School Association was decided, yet eight months before Dayton Christian Schools was decided. Therefore, at the time the motion papers were submitted, the SLRB defendants understandably asserted the argument that, under the authority of Catholic High School Association, SLRB jurisdiction over the labor dispute at the School did not violate the first amendment. In January, 1986, when the motions were argued, Dayton Christian Schools had not yet been decided; so again, for SLRB to pursue the first amendment arguments on the merits was understandable. After Dayton Christian Schools was decided in June 1986, the SLRB defendants expeditiously sent a letter to Judge Broderick contending that his disposition of their cross-motion was governed by this Supreme Court decision. We conclude that the abstention issue was properly before the district court.
 
 
 21
 We next address whether the district court should have abstained from deciding the first amendment issues.[4] In Dayton Christian Schools, based on principles of federalism and comity, the Supreme Court held that a federal court should not enjoin a pending state administrative proceeding when important state interests are involved, as long as the federal plaintiff will have a full and fair opportunity to litigate constitutional claims during or after the proceedings. 106 S.Ct. at 2723.[5] The Court applied this principle to preclude a federal court from reviewing first amendment issues arising from the Ohio Civil Rights Commission's ("Commission") review of a sex discrimination claim brought against Dayton Christian Schools, Inc., a private elementary and secondary school requiring teachers to be born-again Christians. The school had refused to renew the employment contract of Ms. Linda Hoskinson, a pregnant teacher who was told that the school's religious doctrine required that mothers stay home with pre-school children. Ms. Hoskinson sought the advice of an attorney who urged the school to renew Hoskinson's contract to prevent litigation. The school rescinded its nonrenewal decision but terminated Hoskinson because she violated the school's internal dispute resolution process by resorting to action leading to civil suit rather than settling the dispute through the "biblical chain of command."
 
 
 22
 After her termination, Ms. Hoskinson filed a complaint with the Commission, alleging sex discrimination. The Commission initiated administrative proceedings against the school and issued a complaint. The school's answer asserted that the first amendment prevented the Commission from exercising jurisdiction over the school. During the pendency of the administrative proceedings, the school sought an injunction in federal district court in the Southern District of Ohio. The district court refused to issue the injunction, holding that the Commission's proposed action would not violate the first amendment. 578 F.Supp. 1004 (1984). The court of appeals reversed, holding that the first amendment would be violated. 766 F.2d 932 (6th Cir.1985).
 
 
 23
 On appeal by the Commission, the Supreme Court held that since the elimination of sex discrimination is an important state interest and the school would have an adequate opportunity to raise its constitutional claims before the Commission or in a subsequent state court action, the district court should have abstained from exercising jurisdiction to enjoin the Commission from investigating the claim. 106 S.Ct. at 2723. The Court also rejected the school's claim that the mere exercise of jurisdiction by the Commission over the school would violate the first amendment. Id. at 2724.
 
 
 24
 Applying Dayton Christian Schools, we must resolve three questions to determine if abstention is the proper approach in this case: (1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding. As in Dayton Christian Schools, the administrative agency in this case has not yet conducted its formal hearing or imposed any sanctions; hence, an ongoing state proceeding exists. Since we already have held that a state has a compelling interest in regulating the duty to bargain collectively, see Catholic High School Association, 753 F.2d at 1171, we find that an important state interest exists in this case. Finally, the School was able to raise its constitutional claims in a conference before the SLRB and in a memorandum to the SLRB in opposition to SLRB jurisdiction. Further, the constitutional issues involved in this case may be decided in an Article 78 proceeding pursuant to the New York Civil Practice Rules and Laws. See, e.g., Temple Israel of Lawrence, Inc. v. New York State Labor Relations Board, N.Y.L.J., Aug. 21, 1984, at 6, col. 5 (Sup.Ct., New York County Aug. 9, 1984). Moreover, the SLRB cannot enforce its own orders. Consequently, the School will have an opportunity to present its constitutional claims before the New York Supreme Court if the SLRB petitions for enforcement of its order, or if the School seeks review of an SLRB order. See N.Y.Lab.Law Sec. 707 (McKinney 1977). Accordingly, we hold that the doctrine of abstention should have been applied in this case, precluding a determination of the first amendment issues on the merits.
 
 
 25
 For the reasons stated above, the judgment of the district court is affirmed.
 
 
 
 *
 Honorable Charles E. Stewart, Jr., Senior Judge, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 In 1976, the Roman Catholic Diocese of Brooklyn agreed with the School to convey title to the property to the School "so long as the grantee continued the operation of a Roman Catholic High School upon the premises."
 
 
 [2]
 Appellees pursued the abstention defense by letter submission on July 31, 1986 to alert the court to a recently decided Supreme Court case, Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., --- U.S. ----, 106 S.Ct. 2718, 91 L.Ed.2d 912 (1986). See DISCUSSION II, infra. However, the abstention defense had been previously raised by appellees in Paragraph 27 of their answer
 
 
 [3]
 We note that in Dayton it was urged that the state defendants waived their abstention claim by stipulating to the district court's jurisdiction. The Supreme Court rejected this argument, holding that an abstention claim is not waived unless the "State expressly urged this Court or the District Court to proceed to an adjudication of the constitutional merits." 106 S.Ct. at 2722. In view of appellees' letter submission to Judge Broderick urging the district court to abstain from deciding the case on the merits, it cannot be said that appellees waived their abstention claim
 
 
 [4]
 We have held that the abstention doctrine is not usually applied in a case involving a preemption claim. Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323, 326 n. 2 (2d Cir.1982), aff'd, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983); Marshall v. Chase Manhattan Bank (N.A.), 558 F.2d 680, 683-84 (2d Cir.1977). The underlying rationale of this doctrine is that it would be futile to abstain in deference to a state decisional body if it later should develop that it may not have jurisdiction over a dispute due to the preemptive jurisdiction of a federal body. Since we already have determined that the SLRA is not preempted by the NLRA in this area, this policy is not applicable here. Therefore, we need not avoid the abstention claim in this case
 
 
 [5]
 The abstention doctrine enunciated in Dayton Christian Schools is derived from Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. In Younger, the Court held that a federal court should not enjoin a pending state criminal proceeding unless necessary to prevent immediate irreparable injury. After Younger, this principle was extended to civil proceedings in which important state interests are involved. Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Most recently, the Younger doctrine has been extended to pending state administrative proceedings as long as there is the potential for state court review of the federal litigant's constitutional claims. Dayton Christian Schools, 106 S.Ct. at 2723; Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432-34, 102 S.Ct. 2515, 2521-22, 73 L.Ed.2d 116 (1982)