CRAZY EDDIE, INC.; Gabrielle Audio Distributors, Inc.; Simone Audio Distributors, Inc.; David's Audio Distributors, Inc.; West Side Audio Distributors, Inc.; Noelle Audio, Inc.; Mitchell Audio, Inc.; DNS Audio, Inc.; Simcole Audio, Inc.; Nanuet Audio Distributors, Inc.; Renee Audio Distributors, Inc.; Massapequa Audio Distributors, Inc.; Danielle Audio, Inc.; Ace-Hi Record Corporation; SND Audio, Inc.; Third Avenue Home Entertainment Boutique, Inc.; Suffolk Audio Inc.; Debbie Audio, Inc.; Tera Audio Distributors, Inc.; Broadway Audio Distributors, Inc.; Moore Industries Corporation; Allen Audio, Inc.; Queens Boulevard Audio, Inc.; and Ultralinear Sound Corporation, Plaintiffs,

v.

William COTTER, in his official capacity as Commissioner of the New York State Energy Office; Robert Abrams, in his official capacity as Attorney General of the State of New York; General Electric Corporation; Fedders Corporation; and Abraham Portnoy, Inc., also d/b/a A.P. Distributors, Inc., Defendants.

The PEOPLE OF the STATE OF NEW YORK by Robert ABRAMS, Attorney General of the State of New York, Petitioner,

v.

CRAZY EDDIE, INC., and its subsidiaries: Noelle Audio, Inc.; DNS Audio, Inc.; Nanuet Audio Distributors, Inc.; Ace-Hi Record Corporation; Third Avenue Home Entertainment Boutique, Inc.; Debbie Audio, Inc.; Broadway Audio Inc.; Allen Audio, Inc.; West Side Audio Distributors, Inc.; Mitchell Audio, Inc.; Simcole Audio, Inc.; Renee Audio Distributors, Inc.; Danielle Audio, Inc.; SND Audio, Inc.; Suffolk Audio Distributors, Inc.; Tera Audio Distributors, Inc.; Moore Industries Corporation; Queens Boulevard Audio, Inc.; and Ultralinear Sound Corporation, Respondents.

Nos. 86 Civ. 9179 (RJW), 86 Civ. 9485 (RJW).

United States District Court,
S.D. New York.

July 23, 1987.

Teitelbaum & Hiller, P.C., New York City, for plaintiffs/respondents; Robert H. Hermann, Thomas P. Battistoni, M. Rose Gasner, of counsel.

Robert Abrams, Atty. Gen., New York City, for defendants/petitioner; Mary M. Gundrum, Asst. Atty. Gen. of counsel.

## OPINION

ROBERT J. WARD, District Judge.

On November 28, 1986, the Attorney General of the State of New York commenced an action in the New York State Supreme Court, New York County, against Crazy Eddie, Inc. and seventeen individual Crazy Eddie retail stores which sell goods, including room air conditioners, under the Crazy Eddie name (hereinafter collectively "Crazy Eddie") to enjoin them from selling at retail new room air conditioners which fail to comply with New York Energy Law section 16–118(4)(a) and to collect statutory penalties.[1] On December 1, 1986, Crazy Eddie filed a complaint in this Court seeking declaratory and injunctive relief against the Attorney General. 86 Civ. 9179. On December 10, 1986, the remaining state court defendants filed a petition to remove the action to federal court. 86 Civ. 9485. The Attorney General has moved to remand the action in 86 Civ. 9485 to state court and to dismiss the complaint

---

1. The Attorney General reached settlement agreements with the other defendants originally named in the state court action.

in 86 Civ. 9179. Crazy Eddie has cross-moved for summary judgment in both actions.

### BACKGROUND

As part of a comprehensive national energy policy, Congress in 1975 enacted the Energy Policy and Conservation Act ("EPCA" or the "Act").[2] 42 U.S.C. § 6201 *et seq.* For the period relevant to this action, section 325(a) directed the Secretary of Energy (the "Secretary") to prescribe energy efficiency standards for thirteen covered products, including room air conditioners. Under the Act, "[e]nergy efficiency standards for each type (or class) of covered products ... [were to] be designed to achieve the maximum improvement in energy efficiency which the Secretary determines is technologically feasible and economically justified." 42 U.S.C. § 6295(c). The Act further provided that the Secretary was not to prescribe standards, the "no-standard" standard, for particular products if to do so would not have resulted in a significant conservation of energy or if the proposed standard would not be technologically feasible. 42 U.S.C. § 6295(b).

Under the original Act, the normative standards established by the Secretary were to preempt state energy efficiency standards or other state requirements concerning the energy use of a covered product. *Id.* § 6297(b)(2). A determination by the Secretary that no standard was justified for a particular covered product would have carried the same preemptive effect as a promulgated standard. *Id.* § 6295(b).

Under the Act, any state which had regulated the energy use or energy efficiency of a covered product for which a federal standard applied could have petitioned the Secretary requesting a rule that the state regulation had not been superseded.[3] 42 U.S.C. § 6297(b)(2), (3). After considering the petition and the comments of interested persons, the Secretary was to promulgate a rule only if he found that a significant state or local interest justified the state regulation, the state regulation was more stringent than the applicable federal standard, and the state regulation would not unduly burden interstate commerce. *Id.* Once the state had requested a rule, the local rule was not to be superseded until and unless the Secretary denied the requested rule.[4] *See* Fed.Reg. 57,214 (1982).

By 1982, New York had passed various statutes concerning energy efficiency requirements for certain appliances. *See*

---

**2.** On March 17, 1987, President Reagan signed into law the National Appliance Energy Conservation Act of 1987 ("NAECA") which amended the EPCA. Pub.L. No. 100–12, 101 Stat. 103 (1987). The NAECA removed from the Department of Energy ("DOE") the authority to determine new appliance energy efficiency standards and set standards for a number of appliances, including room air conditioners effective January 1, 1990. The NAECA specifically permits state regulation of energy standards for the interim between the bill's passage and the effective date of the new standards.

(b) GENERAL RULE OF PREEMPTION FOR ENERGY CONSERVATION STANDARDS BEFORE FEDERAL STANDARD BECOMES EFFECTIVE FOR A PRODUCT.—Effective on the date of enactment of the National Appliance Energy Conservation Act of 1987 and ending on the effective date of an energy conservation standard established under section 325 for any covered product, no State regulation, or revision thereof, concerning the energy efficiency or energy use of the covered product shall be effective with respect to such covered product, unless the state regulation or revision—

(1) was prescribed or enacted before January 8, 1987, and is applicable to products before January 3, 1988;

. . .

*Id.* § 327(b), 101 Stat. 118. The NAECA, therefore, does not affect the validity or enforceability of New York's Energy Law prior to 1990.

**3.** Rules promulgated under the original Act required the state to submit a notice of petition to the Secretary within 60 days and a complete petition within 120 days after publication of a final standard for a covered product. 10 C.F.R. § 430.4(a)(2).

The NAECA does not specify time limits for the states to apply for a waiver, but it does require DOE to act on a waiver application within six months. Pub.Law No. 100–12 § 327(d)(2), 101 Stat. 119.

**4.** A final energy efficiency standard would have become effective 30 days from the date that the issuance or denial of the final rule concerning that petition had been published in the Federal Register. 10 C.F.R. § 430.34.

N.Y. Energy Law § 16–102 *et seq.* Effective January 1, 1982, the Energy Law mandated certain minimum energy efficiency ratios for room air conditioners.[5] *Id.* § 16–118.

In August 1983, the Secretary promulgated "no-standard" energy efficiency standards for eight consumer appliances, including room air conditioners. 48 Fed. Reg. 39,408 (1983), codified at 10 C.F.R. § 430.32. The New York State Energy Office promptly filed a notice of petition for exemption from preemption with respect to the room air conditioner standards dated October 21, 1983 and a completed petition dated December 27, 1983 with the Department of Energy ("DOE"). On August 17, 1984, DOE published a notice of its intention to grant the petitions of New York and twenty-five other states. 49 Fed. Reg. 32,944 (1984). The Secretary premised the proposed exemption for New York on findings that the State had presented a significant local interest, the New York efficiency standards exceeded the proposed federal requirements, and the standards would not significantly burden interstate commerce. 49 Fed.Reg. 32,963 (1984).

On July 16, 1985, the Court of Appeals for the District of Columbia Circuit invalidated the Secretary's actions in promulgating the no-standard standards and ordered a comprehensive reappraisal of the appliance program. *Natural Resources Defense Council, Inc. v. Herrington,* 768 F.2d 1355 (D.C.Cir.1985). DOE terminated proceedings on the petitions for rulings that state standards had not been preempted by the federal standards on March 5,

1986. 51 Fed.Reg. 7,582 (1986). Consequently, the Secretary never published final orders in response to the states' petitions. Thereafter, Congress rendered further agency proceedings moot by passing the NAECA.

Following the decision in *Herrington,* the Attorney General of the State of New York, acting along with the New York State Energy Office, advised Crazy Eddie and various other retailers that they could not advertise for sale or sell at retail room air conditioners which had energy efficiency ratios below those prescribed by section 16–118(4)(a) of the Energy Law. On November 7, 1986, the Attorney General issued a notice of proposed action against Crazy Eddie for false advertising and violations of the Energy Law. The Attorney General subsequently filed suit to enjoin Crazy Eddie from advertising or offering for sale new room air conditioners which fail to meet the mandated efficiency requirements, to force restitution for all those who purchased non-complying air conditioners, and to recover a fine of $250.00 for each sale of a non-conforming air conditioner.

On December 1, 1986, Crazy Eddie and twenty-four of its retail outlets filed a complaint in the United States District Court for the Southern District of New York seeking a declaration that the ECPA preempted the New York Energy Law and an injunction preventing the Attorney General from seeking to enforce provisions of the Energy Law.[6]

---

**5.** The statute prescribed efficiency ratios by cooling capacity and operating voltage.

Minimum Energy Efficiency
Ratio (EER) in BTU
per hour per watt

| Cooling Capacity BTU per hour | Nominal Operating Voltage | Jan. 1–78 | Jan. 1–79 | Jan. 1–80 |
|---|---|---|---|---|
| 5,999 and less | Less than 150 | 6.5 | 7.0 | 7.5 |
| 6,000 and over | Less than 150 | 7.5 | 8.0 | 8.5 |
| all sizes | 150 or greater | 7.0 | 7.5 | 8.2 |

---

N.Y. Energy Law § 16–118(4)(a).

**6.** Crazy Eddie also sued the General Electric Corporation, the Fedders Corporation and one of their distributors alleging breach of warran-

On December 10, 1986 the remaining defendants in the state court action filed a petition pursuant to 28 U.S.C. § 1441 to remove the case to the United States District Court for the Southern District of New York. 86 Civ. 9485. There is no diversity between the parties. In the petition, the defendants contend that the action by the Attorney General (1) raises a federal question, (2) is, in substantial respects, a federal claim for relief, and (3) arises under the commerce and supremacy clauses of the constitution and the EPCA.

The Attorney General has moved to remand 86 Civ. 9485 to the state court on the grounds that the action raises no federal question and therefore was improperly removed. He also asks the Court to dismiss the complaint in 86 Civ. 9179 on the basis of various theories of abstention. Crazy Eddie has cross-moved for summary judgment in both actions. For the reasons to follow, the Court grants the Attorney General's motions and remands 86 Civ. 9485 to the New York Supreme Court, New York County, and dismisses the complaint in 86 Civ. 9179.

## DISCUSSION

### I. Removal.

■ The removing party bears the burden of establishing that the case falls within the court's removal jurisdiction. *Cuomo v. Long Island Lighting Company*, 589 F.Supp. 1387, 1391 (E.D.N.Y.1984). Because the parties are not diverse, removal is improper unless the suit "arises under the Constitution, laws or treaties of the United States."[7] 28 U.S.C. §§ 1331, 1441(a).

■ Removal is normally improper unless a federal claim appears on the face of a well-pleaded complaint, "unaided by any-

ty. Crazy Eddie voluntarily discontinued the action against those defendants.

7. In relevant part, the removal statute provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the

thing alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). When plaintiff's allegations would state both a federal and a state cause of action, the plaintiff may defeat removal by ignoring the federal question and pitching his claim solely on the state ground. 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.160 (2d ed. 1979) ("Moore's"). While the plaintiff is thus master of the complaint, courts will nonetheless look beyond an artfully pleaded state claim which is in reality premised on federal law.

[O]ccasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization. For instance, in many contexts plaintiff's claim may be one that is exclusively governed by federal law, so that the plaintiff necessarily is stating a federal cause of action, whether he chooses to articulate it that way or not. If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading.

14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3722 at 268–75 (2d ed. 1985) (citations omitted) ("Wright & Miller").

On the face of the complaint, the Attorney General seeks only to enjoin the sale within New York of room air conditioners that do not comply with section 16–118 of the New York Energy Law. Consequently, no federal question appears on the face of the complaint.[8] Crazy Eddie argues, how-

defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
28 U.S.C. § 1441(a).

8. Inasmuch as there are no extant federal standards, the Attorney General could not be relying on explicit provisions of the EPCA. *See* 42 U.S.C. §§ 6303–05. Moreover, inasmuch as the relief demanded in the complaint is not avail-

ever, that the provisions of the ECPA which preempt inconsistent state energy efficiency standards justify removal, or, in the alternative, that the Attorney General's complaint contains a federal ingredient.

### A. Preemption.

 When federal law circumscribes the operation of state authority, preemption is ordinarily a defense to a state cause of action and consequently it usually affords no basis for removal. *Franchise Tax Board v. Laborers Vacation Trust, supra,* 463 U.S. at 12 & n. 12, 103 S.Ct. at 2848 & n.12; *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 758 & n. 6 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986); *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 666 (9th Cir.1985). Nevertheless, "[s]ome federal statutes have so strong a preemptive effect that they do more than merely provide a defense to a state-law claim. Instead federal law is considered to have taken over• an entire subject matter and made it inherently federal." 13B Wright, Miller & Cooper § 3566 at 105. In those instances, a plaintiff who asserts a displaced state cause of action that falls within the ambit of the federal remedy has necessarily pleaded in fact a federal claim which may be removed. *See, Franchise Tax Board v. Construction Laborers Vacation Trust,*

*supra,* 463 U.S. at 23–24, 103 S.Ct. at 2853–2854 (discussing *Avco Corp. v. Aero Lodge,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) which involved a claim for breach of collective bargaining agreement cognizable only under federal Labor-Management Relations Act); *Travelers Indemnity Co. v. Sarkisian, supra,* 794 F.2d at 758; *American Synthetic Rubber Corp. v. Louisville & Nashville Railroad Co.,* 422 F.2d 462 (6th Cir.1970) (claim for negligent delivery of goods cognizable only under Carmack Amendment to Interstate Commerce Act). Thus when federal law completely displaces state law and confers federal remedies, removal on the basis of preemption may be appropriate. *Harper v. San Diego Transit Corp., supra,* 764 F.2d at 666.

 Crazy Eddie now contends that when Congress enacted the EPCA it intended to occupy the entire field of energy efficiency standards. The court has difficulty fathoming how Crazy Eddie can make this argument with a straight face. The inclusion within the statute of explicit provisions permitting the states to set more rigorous efficiency standards completely undermines any argument that Congress occupied the entire field and made it inherently federal.[9] Rather than evincing an explicit or implicit intent to preempt all state standards, Congress specifically con-

---

able under the EPCA, the Attorney General's cause of action could not be an artfully pleaded federal claim. *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 759–61 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986).

**9.** Under the previous section of the EPCA, a state had to establish a significant state or local interest to justify the regulation and that the regulation would not unduly burden interstate commerce. 42 U.S.C. § 6297(b)(1). The NAECA considerably tightens that standard.

(d) WAIVER OF FEDERAL PREEMPTION....

(1)(B) Subject to paragraphs (2) through (5), the Secretary shall within the period described in paragraph (2) and after consideration of the petition and the comments of interested persons, prescribe such rule if the Secretary finds (and publishes such finding) that the State has established by a preponder-

ance of the evidence that such State regulation is needed to meet unusual and compelling State or local energy interests.

(C) For purposes of this subsection, the term "unusual and compelling State or local energy interests" means interests which—

(i) are substantially different in nature or magnitude than those prevailing in the United States generally; and

(ii) are such that the costs, benefits, burdens, and reliability of energy savings resulting from the State regulation make such regulation preferable or necessary when measured against the costs, benefits, burdens and reliability of alternative approaches to energy savings or production, including reliance on reasonably predictable market-induced improvements in efficiency of all products subject to the State regulation....

Pub.Law § 327(d), 101 Stat. 118–19. That the AECA tightens the requirements to obtain a waiver of federal preemption in no way detracts from the obvious conclusion that Congress did not intend to displace the states entirely.

templated concurrent state regulation. Had Congress wished instead to supplant all state regulation, it would simply have specified uniform national standards or have prohibited state standards entirely. Because the EPCA does not exclude state regulation of energy efficiency standards, the preemption that Crazy Eddie argues is necessarily a defense to the state action and does not afford any basis for removal jurisdiction.[10]

### B. Federal Ingredient.

Crazy Eddie argues that the interaction between federal statutes and the New York Energy Law obliges the Attorney General to rely on disputed federal propositions as an element of that cause of action. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson,* — U.S. ——, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986) (citing *Franchise Tax Board, supra*). In addition, Crazy Eddie contends that the Attorney General's cause of action premised on the Energy Law necessarily involves the substantial and controlling federal ingredients of (1) whether the EPCA or the Federal Trade Commission Act preempts state energy efficiency standards or labelling requirements, (2) whether New York timely sought an exemption from federal regulation, and (3) whether the commerce and supremacy clauses of the constitution limit the extent to which New York may enforce its energy laws.

To prevail on the first aspect of this argument, Crazy Eddie must establish that the cause of action under the relevant sections of New York's Energy Law depends necessarily on some substantial, disputed construction of federal law. The Attorney General's affirmative claims require only that Crazy Eddie have sold or offered for sale room air conditioners in New York that did not meet the energy efficiency requirements of section 16–118. None of the elements of that pleaded cause of action depends explicitly on the EPCA or any other federal ingredient.[11]

The well-pleaded complaint rule directs the conclusion that neither of the supposed federal ingredients which concern preemption is properly a part of the Attorney General's affirmative case. Rather they concern whether Crazy Eddie might assert a defense based on the EPCA. Crazy Eddie may no more gain access to the federal courts by asserting this defense than the Attorney General could have by anticipating it.

Finally, the asserted constitutional limitations imposed by the commerce and supremacy clauses "form no part of [Crazy Eddie's] affirmative claims, and the case does not arise under federal law merely because federal law defines the 'operative limits' of a state rule." *Travelers Indemnity Co. v. Sarkisian, supra,* 794 F.2d at 762 (quoting *Gully v. First National Bank,* 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936)).

In sum, Crazy Eddie has posited no substantial, disputed federal ingredient which would support removal jurisdiction. Accordingly, the Court grants the Attorney General's motion to remand 86 Civ. 9485 to

---

10. For preemption to provide the federal issue to permit removal, Congress must not only have occupied the entire field, but also have provided federal remedies. It is only when the displaced state cause of action which plaintiff asserts mirrors an available federal remedy that a court could construe the complaint as stating a federal cause of action which would allow removal. As noted above, it does not appear that the Attorney General could have stated a cause of action under federal law.

11. While Article 16 does contain references to federal law, none of those references concern an element of the State's cause of action against Crazy Eddie. Section 16–104 directs the commissioner of the state energy office to determine the impact of petitions by DOE to supersede state requirements and empowers the commissioner to request that the petition to supersede be denied or to request a rule that the state standards not be superseded. Section 16–118(2)(c) provides that should the federal government adopt labelling requirements, state labelling requirements would be superseded. Thus while certain questions of federal law concerning the EPCA or the FTCA might emerge during the litigation of the suit, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* — U.S. ——, 106 S.Ct. 3229, 3235 & n. 11, 92 L.Ed.2d 650 (1986).

the New York Supreme Court, New York County.

II. Abstention in 86 Civ. 9179.

A. Subject Matter Jurisdiction.

Crazy Eddie premises jurisdiction over this action on the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Declaratory Judgment Act, 42 U.S.C. § 2201, and the EPCA.[12]

■ The Declaratory Judgment Act did not expand the jurisdiction of the federal courts. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). A federal court has jurisdiction under the act only if the well-pleaded complaint of the anticipated coercive action would have contained a federal ingredient. Thus

> [w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

*Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952). Thus, if "but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action,

jurisdiction is lacking." 10A Wright, Miller & Kane § 2767 at pp. 744–45.

■ As noted above, the Attorney General's affirmative cause of action in the complaint filed in the New York Supreme Court does not contain any federal ingredients. Crazy Eddie, however, contends that New York's attempt to enforce its laws conflicts with the dictates of the EPCA. Without passing on the validity of that contention, the Court recognizes that "in some cases ... a person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of conflicting state regulations, and a declaratory judgment action by the same person does not necessarily run afoul of the *Skelly Oil* [*Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)] doctrine." *Franchise Tax Board v. Laborers Vacation Trust, supra*, 463 U.S. at 20 n. 20, 103 S.Ct. at 2852 n. 20, 77 L.Ed.2d 420. Accepting *arguendo* those contentions of conflict, the Court has jurisdiction to consider the question of abstention.

B. Preemption Precluding Abstention.

■ Crazy Eddie next argues that the Court should not abstain in this case inasmuch as it involves a question of preemption. *See Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323, 326 n. 2 (2d Cir.1982), *aff'd*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983). As a subsequent panel of the Court of Appeals has elaborated, "[t]he underlying rationale of this doctrine is that it would be futile to abstain in deference to a state decisional body if it later should develop that it may not have jurisdiction over a dispute due to the preemptive jurisdiction of a federal body." *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 223 n. 4 (2d Cir.1987). The court thus acknowledged explicitly the distinction, implicit in its prior holdings on the subject, between express or implied preemption which ousts the states entirely and preemption that appears only as a defense to an action in an

---

**12.** Crazy Eddie does not premise jurisdiction on the enforcement provisions of the Act, *see* 42 U.S.C. §§ 6302–05, but rather contends that in-asmuch as the EPCA regulates interstate commerce, jurisdiction exists under 28 U.S.C. § 1337.

area in which the states may permissibly regulate. Since the Court has already determined that the EPCA does not preclude concurrent state regulation, Crazy Eddie's remaining contentions of preemption appear only as a defense to permitted state regulation and this policy does not apply. Accordingly, the Court need not avoid the abstention issue presented by this case.

### C. *Younger* Abstention.

■ The federal courts have a fundamental obligation to determine controversies that fall within their subject matter jurisdiction. Nevertheless, when the case falls within one of the narrow recognized categories in which concurrent state proceedings would render adjudication unproductive, the federal courts have a duty to abstain. *Law Enforcement Insurance Co., Ltd. v. Corcoran*, 807 F.2d 38, 39 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). The Attorney General argues that the category of abstention espoused in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), applies here.

■ *Younger v. Harris, supra*, and succeeding cases outline the strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. In *Pennzoil Co. v. Texaco, Inc.*, — U.S. —, 107 S.Ct. 1519, 1525–26, 95 L.Ed.2d 1 (1987), the Court emphasized that the second ground of its decision in *Younger* rested on comity, the notion that the federal

courts should accord the state courts proper respect by endeavoring to protect federal rights and federal interests in ways that do not unduly interfere with legitimate state activities. Comity, the Court held, mandated application of *Younger* abstention "when certain civil proceedings are pending, if the State's interests in the proceedings are so important that exercise of the federal judicial power would disregard the comity between the States and the National government." *Id.* 107 S.Ct. at 1526 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–05, 95 S.Ct. 1200, 1207–09, 43 L.Ed.2d 482 (1975)). Thus, when the state (1) has instituted prior, pending judicial proceedings, (2) which implicate important state interests, and (3) afford the litigants an adequate opportunity to raise constitutional challenges, the federal court should abstain. *Middlesex Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Christ the King Regional High School v. Culvert*, 815 F.2d at 224.

■ The parties energetically dispute whether the Attorney General successfully commenced the state court action before Crazy Eddie filed its action in the Southern District of New York.[13] The applicability of *Younger* abstention does not turn on the outcome of the race to the courthouse or on the technicalities of state rules of service. "[W]here state ... proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court, the principles

---

13. Under New York law a special proceeding is commenced and jurisdiction is acquired by service of a notice of petition. N.Y.Civ.Proc. L. & R. § 304. Consequently, the relevant date for purposes of determining when an action is commenced is service rather than filing. In early November of 1986, the Attorney General mailed Crazy Eddie notification that the State intended to commence an action for violation of the Business Corporation Law and the Energy Law. The Attorney General attempted to serve Crazy Eddie with a notice of petition and affirmation in the state court action on November 28, 1986. Crazy Eddie, however, vigorously contests the adequacy of that attempted service. While the State's process server successfully served one of Crazy Eddie's retail outlets he did not find anybody at the address for Crazy Eddie listed with

the New York Secretary of State. Crazy Eddie had moved its corporate headquarters to New Jersey. The process server then attempted to serve the petition and complaint at Crazy Eddie's office in New Jersey by asking for an officer or director of the corporation. When he was told that no officer or director was available, the process server delivered the petition to a salaried employee in charge of arranging leases for Crazy Eddie's retail stores. The State remedied any deficiency in the service of process by serving the Secretary of State on December 12, 1986. *See* Bus.Corp.Law § 306(b). Crazy Eddie filed its first federal action, 86 Civ. 9179, on December 1, 1986 and filed a petition to remove the state court proceeding, 86 Civ. 9485, on December 10, 1986.

of *Younger v. Harris* should apply in full force." *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975). In this case, the Attorney General notified Crazy Eddie of its intention to file suit in the middle of November 1986 and attempted service on Crazy Eddie and apparently succeeded in serving one of Crazy Eddie's subsidiaries on November 28, 1986. The Attorney General completed service of process before any proceedings of substance had occurred in either of the proceedings in this Court. *See Middlesex Ethics Committee v. Garden State Bar Association, supra*, 457 U.S. at 436–37, 102 S.Ct. at 2523–24 (deciding question of abstention is not a proceeding of substance on the merits); *cf. Town of Lockport v. Citizens for Community Action*, 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 1051 n. 8, 51 L.Ed.2d 313 (1977) (federal court need not abandon jurisdiction properly acquired simply because similar suit is later filed in state court). Accordingly, for the purposes of deciding whether to abstain under *Younger*, the state court proceeding was pending by the time Crazy Eddie filed its action in the Southern District of New York.

■ In the state court suit, the Attorney General seeks to vindicate New York's legitimate interest in maintaining an orderly and integrated policy of energy regulation in an area specifically left to it by Congress. The state court action therefore implicates an important state interest. *See, e.g., Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (enforcing state sex discrimination laws); *Christ the King Regional High School v. Culvert, supra*, 815 F.2d 219 (regulating the duty to bargain collectively); *Corcoran v. Arda Insurance Co., Ltd.* 657 F.Supp. 1223 (S.D.N.Y.1987) (maintaining orderly system to regulate the insurance industry); *Onondaga Landfill Systems, Inc. v. Williams*, 624 F.Supp. 25 (N.D.N.Y.1985) (monitoring solid waste disposal); *see generally* 17 Wright, Miller & Cooper § 4554.

Finally, Crazy Eddie makes no contention that the New York Supreme Court cannot or will not hear its federal statutory and constitutional arguments. Nor does Crazy Eddie argue that State officials began the proceedings in bad faith to harass its business. Accordingly, the Court holds that the doctrine of abstention as enunciated in *Younger v. Harris* applies on the facts of this case.

### CONCLUSION

On the circumstances of this case, the doctrine of preemption does not support removal of 86 Civ. 9485. Nor does a federal ingredient appear from the affirmative causes of action upon which the Attorney General relies. The Court, therefore, lacks subject matter jurisdiction to hear the case and, accordingly, grants the Attorney General's motion to remand the action to New York Supreme Court, New York County. As subsequently developed, the principle of abstention first announced in *Younger v. Harris* applies to Crazy Eddie's action for injunctive and declaratory relief. Accordingly, the Court grants the Attorney General's motion to dismiss the complaint in 86 Civ. 9179. Crazy Eddie's cross-motions for summary judgment in both actions are denied in their entirety.

It is so ordered.