AMERICAN MOTOR CLUB,
INC., Plaintiff,

v.

James P. CORCORAN, individually and as the Superintendent of the Department of Insurance of the State of New York; Martin Minkowitz, individually and as Deputy Counsel of the Insurance Department of the State of New York; and Nathan Silver, individually and as Chief of the Consumer Services Bureau of the Department of Insurance of the State of New York; Alan DiPiazza, individually and as a Senior Insurance Examiner of the State of New York, Defendants.

No. 86 Civ. 6107(RWS).

United States District Court,
S.D. New York.

Sept. 25, 1986.

Rosner & Goodman, New York City, for plaintiff; Andrew J. Goodman, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Richard G. Liskov, August L. Fietkau, Asst. Attys. Gen., of counsel.

SWEET, District Judge.

In this action brought under 42 U.S.C. § 1983, plaintiff American Motor Club, Inc.

("AMC") has moved for a preliminary injunction to prevent defendants, officers and employees of the Department of Insurance of the State of New York (the "Department"), from taking action against brokers in regard to any AMC matters. For the reasons stated below, the request for a preliminary injunction is granted in part.

**Prior Proceedings**

AMC filed this action on August 8, 1986 and on that day by order to show cause sought a temporary restraining order pending the resolution of its motion for preliminary injunction. At a conference between the parties it was agreed and ordered that no brokers' licenses would be revoked "as a consequence of their relationship with the plaintiff" during the pendency of this motion. AMC's motion to bar further investigation was denied.

On September 9, 1986 the motion for preliminary injunction was heard on affidavits and memoranda and the testimony of Nicholas Neu, president of AMC, was taken. On the basis of these proceedings, the following findings and conclusions have been reached.

**Facts**

AMC is a New York corporation engaged in business as an automobile club providing certain benefits to its members. By petition served and filed on October 8, 1985, the Department sought to enjoin the sale of AMC memberships on the ground that the membership benefits constitute insurance and that AMC is not authorized to sell insurance in the State of New York. *See People v. American Motor Club, Inc.*, No. 43138/35 (N.Y.Sup.Ct., N.Y.County, filed Oct. 8, 1985). AMC defended the proceeding on the ground that its memberships are not insurance. The issue was submitted to the Supreme Court of the State of New York, County of New York on December 12, 1985 and is *sub judice*.

Sometime in early 1986, the Department commenced an investigation of brokers who sell AMC memberships. In March through May, 1986, several brokers were summoned to appear and produce doc-

uments at the Department of Insurance in connection with AMC matters. On or about July 24, 1986, twenty-six or more brokers received letters from defendant Alan DiPiazza ("DiPiazza"), senior insurance examiner, indicating that they were the subject of an investigation of licensees who "may have improperly placed insurance business with [AMC]." On or about July 30, approximately one hundred and thirty brokers received letters from DiPiazza indicating that they were also the subject of such an investigation.

Some brokers were advised orally by employees of the Department that their relationship to AMC and failure to promptly settle claims refused by AMC might cause cancellation of their licenses. This finding and certain of those which follow are based on hearsay in affidavits as well as sworn testimony. Nevertheless, this evidence gives rise to "sufficiently serious questions going to the merits to make them a fair ground for litigation," *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir.1979), and thus is admissible for the purposes of this motion.

As a result of the Department's recent activities, AMC's business has fallen drastically. While the number of membership sales increased from the time of the commencement of the state proceeding in October, 1985 through the first half of 1986, sales dropped after the mailing of the Department's July 24, 1986 letter from an average of 110 new memberships a day for the preceding eight Tuesdays to 32 new memberships on August 4, 1986—a drop of 70%. After this court entered a temporary restraining order on consent on August 8, 1986, enjoining the Department from revoking any licenses "as a consequence of their relationship with the plaintiff," sales went back up from a 70% decline to a 35% decline over prior sales. This represents a loss of 200 memberships a month, at a $1,000 annual fee. In addition, approximately 45 of the 450 brokers who previously sold AMC memberships no longer do business with AMC.

**Abstention**

■ AMC alleges that the state defendants are violating its due process rights by continuing to conduct a state administrative investigation and, through threats, harassment, coercion and intimidation, attempting to restrain or prohibit the sale of allegedly unauthorized insurance prior to a determination in the state case. By such ·actions, the state defendants are allegedly attempting to prohibit the sale of AMC memberships without the hearing required by New York law and thus depriving AMC of its due process. The authority standing for the proposition that no such cancellation or injunction against the brokers can issue without a hearing and state determination, *see American Auto. Consumer Repair Agreement, Ltd. v. Corcoran*, 108 A.D.2d 547, 489 N.Y.S.2d 732 (1st Dep't 1985), is not challenged by the Department. Therefore, at least facially, a § 1983 violation appears to be properly alleged.

The Department defends against the motion by urging abstention from the exercise of jurisdiction under § 1983 because of the pending state proceedings against AMC. Under current Supreme Court doctrine, abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

> Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 [79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163] (1958).

424 U.S. at 813, 96 S.Ct. at 1244. The three general categories of abstention are: (1) where a "federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law," *id.* at 814, 96 S.Ct. at 1244; (2) where "there have been presented difficult questions of state law

bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *id.*, and (3) where "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, ... state nuisance proceedings antecedent to a criminal prosecution, ... or collection of state taxes," *id.* at 816, 96 S.Ct. at 1245. The Supreme Court has expanded the latter category to include other state civil enforcement proceedings as well. *See, e.g., Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (pre-hearing seizure by state agency); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (pending suit by state to enjoin fraudulent practices); *see also American Transit Ins. Co. v. Insurance Dep't of New York State,* No. 83 Civ. 3796 (S.D.N.Y. Jan. 24, 1984) (New York insurance regulatory proceeding).

> [I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies.

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). A federal court should not exercise its jurisdiction if the plaintiffs "had an *opportunity* to present their federal claims in state [enforcement] proceedings." *Moore v. Sims,* 442 U.S. 415, 425, 99 S.Ct. 2371, 2378, 60 L.Ed.2d 994 (1979) (quoting *Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977)).

According to the Department, AMC has had ample opportunity to present its claims in the state court proceedings against AMC and in proceedings to quash subpoenas served on Bernard McCreesh and Kathy Cilibrasi, in which AMC has sought to intervene. *See Application of McCreesh,* No. 8464/86 (N.Y.Sup.Ct., N.Y.County, May 22, 1986); *Application of Cilibrasi,* No. 11565/86 (N.Y.Sup.Ct., N.Y.County). In *People v. American Motor Club,* No. 43138/85 (N.Y.Sup.Ct., N.Y.County, filed Oct. 8, 1985), AMC's notice of cross-motion sought injunctive relief to prevent the state, in the absence of a final judicial determination, from "publishing any matter or thing of or concerning [AMC] or the nature and substance of this proceeding pending entry of a final Judgment terminating this proceeding" and in its application to intervene in *McCreesh* and *Cilibrasi,* AMC alleged that it should be permitted to intervene "to protect its interests ... so that the Respondent's entirely improper investigation will be judicially halted."

Although AMC did not seek preliminary injunctive relief or to halt Department investigations or publications of AMC's activities other than by its cross-motion, the events on which the present application is based occurred only after the state case had been submitted for decision.

Since AMC's present claims, based primarily on events in July and August of this year, were not and could not have been submitted to the state court prior to submission of the case in December, 1985 except by AMC's effort to intervene in the proceedings to quash the Department's subpoenas, AMC is not now compelled to request relief from the state rather than the federal court. "[I]t is settled law that a § 1983 litigant need not first seek to vindicate his federal claims in state court before turning to a federal court for relief." *Texaco, Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1144 (2d Cir.1986). Indeed, the prolonged delay of the state court in rendering a decision in *People v. American Motor Club* itself may at some stage itself constitute a denial of due process. Abstention is not required under these circumstances.

**Irreparable Injury**

■ The standards for granting a preliminary injunction in the Second Circuit are set forth in *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 604 F.2d 755, 758 (2d Cir.1979):

> [A] showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance

of hardships tipping decidedly toward the party requesting preliminary relief.

To show irreparable harm, AMC cites the effects that the Department's actions have had on its business—effects which it claims threaten AMC's very existence. Threatened destruction of a business is the type of irreparable injury that supports a preliminary injunction. *See Two Wheel Corp. v. American Honda Corp.*, 506 F.Supp. 806, 815 (E.D.N.Y.1980), *aff'd*, 633 F.2d 206 (2d Cir.1980).

While the mere conduct of an investigation is not a violation of AMC's due process rights, *see infra*, a threat to punish brokers who continue to sell AMC memberships does constitute such injury. The jump in sales after the temporary restraining order was issued is some evidence to support the hearsay statements that threats of revocation caused a substantial number of lost sales. The potential damage to AMC of up to 30% and possibly even 70% of its normal sales is sufficient to constitute irreparable harm.

### Likelihood of Success on the Merits

42 U.S.C. § 1983 creates a private right of action against every person who under color of state law subjects another to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." AMC claims that the Department has violated its right not to be deprived of its property without due process of law by preventing brokers from selling AMC memberships through intimidation and harassment rather than the procedures dictated by state law.

> New York Insurance Law provides that: The superintendent may maintain and prosecute ... an action against any insurer ... or against any broker or adjuster or against any other person subject to the provisions of this chapter, for the purpose of obtaining an injunction restraining such person from doing any acts in violation of the provisions of this chapter.

N.Y. Insurance Law § 327(a) (McKinney 1985). In *American Auto. Consumer Repair Agreement, Ltd. v. Corcoran*, 108 A.D.2d 547, 489 N.Y.S.2d 732 (1st Dep't 1985), the Supreme Court, Appellate Division interpreted that provision to require the Department of Insurance to commence an action for an injunction in order to "challenge specific conduct ... as being contrary to statutory mandates." 489 N.Y. S.2d at 734. In that case, the court affirmed the lower court's decision to vacate the Department's order, pursuant to letter, to "cease and desist" from selling certain service repair agreements in New York State. The court stated that the Department would have to bring a legal action to "restrain petitioners from continuing in their purportedly illegal conduct." Id.

A threat by the Department to revoke brokers' licenses, either for failure to stop selling AMC memberships or for failure to settle claims under AMC memberships, constitutes a "restraint" on brokers' sales of AMC memberships and grounds for granting a preliminary injunction. The threat of punishment if a broker continues to sell memberships is analogous to the order to cease selling memberships in *American Automobile*. The threat of revocation of a license, without which an insurance broker cannot do business, is a powerful restraint on the sale of memberships. *Cf. Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963) ("the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," although informal, nevertheless constitutes "suppression" of allegedly obscene publications). Similarly, the threat to revoke brokers' licenses if claims refused by AMC are not promptly settled, constitutes a restraint on sales of memberships. By seeking to force brokers to settle claims against AMC, the Department indirectly discourages brokers from selling AMC memberships.

A Department investigation into further possible violations of insurance law, however, does not in itself constitute an action to "restrain [any person] from doing any acts in violation of this chapter." N.Y. Insurance Law § 327(a) (McKinney 1985). Similarly, the July 24, 1985 letters do not

constitute a "restraint" by the Department. The letters merely request the recipients to appear to furnish the Department with sworn testimony regarding "licensees of this Department who may have improperly placed insurance business with unauthorized insurance companies."

**Balance of Hardships**

As a final element of its request for a preliminary injunction, plaintiff must show that a balance of hardships tips decidedly in its favor. With respect to its request to enjoin defendants from threatening to punish brokers for selling AMC memberships, AMC has made that showing. If threats of revocation are indeed the cause of a substantial part of the 70% decline in sales prior to the temporary restraining order, AMC will be forced to go out of business by defendants' continuing threats to revoke brokers' licenses pending the outcome of the state proceeding.

On the other hand, the state defendants will not be unreasonably burdened by an injunction issued on the limited grounds here set forth. The Department can continue its investigation of further violations of New York Insurance Law. State defendants are enjoined only from restraining brokers by improper threats of punishment.

Therefore, state defendants are enjoined, pending decision in *People v. American Motor Club, Inc.*, from restraining persons through revocation of their licenses or threats of revocation or other punishment, from continuing in conduct whose purported illegality will be decided by the state court proceeding.

Submit order on notice.

IT IS SO ORDERED.