842 F.2d 37
 The UNIVERSITY CLUB and the Union League Club, Plaintiffs-Appellants,
v.
The CITY OF NEW YORK, Edward I. Koch, the Mayor of the City
of New York, the New York City Commission on Human Rights,
Dr. Marcella Maxwell, S. Ted Antholes, Rabbi Jacob Bronner,
Joyce Hunter, Glenn Lau-Kee, James B. Levin, Wittie McNeil,
Leroy E. Pagano, Lydia Riviero, Julia Gared De Rodriguez,
Helga Weiss Tanenbaum, Boleslaw Wierzbianski and Andrew
Wolf, Defendants-Appellees.
 No. 228, Dockets 87-7312, 87-7372.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 14, 1988.
Decided March 17, 1988.
 
 J. Robert Lunney, New York City (Andrew P. Saulitis, Lunney & Crocco, New York City, of counsel), for plaintiffs-appellants.
 Lin Saberski, Asst. Corp. Counsel, New York City (Peter L. Zimroth, Corp. Counsel, Stephen J. McGrath, Patricia A. O'Malley, Peter H. Lehner, Asst. Corp. Counsel, New York City, of counsel), for defendants-appellees.
 Before CARDAMONE, PRATT and ALTIMARI, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 In this challenge to the New York City "Public Accommodations Law", N.Y.C.Admin.Code, Sec. 8-102(9), 8-107(2) (1986), plaintiff The Union League Club (hereinafter "Union League") seeks to enjoin an administrative investigation and potential enforcement action by the city's Human Rights Commission. The district court concluded, 655 F.Supp. 1323 (S.D.N.Y.1987), that Union League's complaint, while styled as an "as-applied" challenge, was in fact an attack on the facial constitutionality of the law, and as such was barred by the res judicata effect due a state court judgment that already has been rendered on such a claim. New York State Club Ass'n v. City of New York, 69 N.Y.2d 211, 513 N.Y.S.2d 349, 505 N.E.2d 915 (1987), prob. juris. noted, --- U.S. ----, 108 S.Ct. 62, 98 L.Ed.2d 26 (1987). We conclude that abstention is appropriate here, and thus affirm without reaching the res judicata issue found decisive by the district court.
 
 BACKGROUND
 
 2
 This case is one of two ongoing challenges to Local Law 63, by which New York City in 1984 amended its public accommodations law. Prior to the amendment, the law barred discrimination in places of public accommodation, and exempted "any institution, club or place of accommodation which proves that it is in its nature distinctly private." N.Y.C.Admin.Code Sec. 8-102(9). The purpose of amending the law was to establish specific standards to define the term "distinctly private" for purposes of the statutory exemption. By the terms of Local Law 63,
 
 
 3
 An institution, club or place of accommodation shall not be considered in its nature distinctly private if it has more than four hundred members, provides regular meal service and regularly receives payment for dues, fees, use of space, facilities, services, meals or beverages directly or indirectly from or on behalf of nonmembers for the furtherance of trade or business.
 
 
 4
 Almost immediately upon its passage, the constitutionality of Local Law 63 was challenged in state court by the New York State Club Association, Inc. (hereinafter "NYSCA"), on behalf of its member clubs, one of which is Union League. NYSCA alleged that Local Law 63 is facially unconstitutional in that it is overbroad, subjecting to regulation private clubs as to which the application of the public accommodations law would infringe the constitutional right to free association, and that the express exemption for religious corporations and benevolent orders violates the due process and equal protection clauses. These facial challenges to Local Law 63 were rejected at each level of the state court system, and the case is now pending before the United States Supreme Court. New York State Club Ass'n, Inc. v. City of New York, supra.
 
 
 5
 While the NYSCA suit was pending in state court, the city's Human Rights Commission (hereinafter "the commission") began an investigation into the practices of several clubs, including Union League and the University Club, which it believed might no longer be able to claim status as "distinctly private" as that term was defined by Local Law 63. On January 30, 1986, the commission filed a complaint against Union League and the University Club, along with another club, alleging that they excluded women from membership in violation of the public accommodations law. The filing of the complaint began the commission's formal investigation, which culminated on July 7, 1987, when the commission issued a finding of probable cause detailing its findings and inviting the clubs to schedule a date for a conciliation meeting. After the clubs declined to respond, the case was referred to the commission's hearings division.
 
 
 6
 While the commission investigation was proceeding, Union League and the University Club initiated the instant federal action in March 1986 in the Southern District of New York, seeking a declaratory judgment that the new definition of "distinctly private" was unconstitutional on its face and as applied to them, and a permanent injunction blocking the administrative proceedings against them.
 
 
 7
 Without addressing the city's claim that it should abstain because of the pending administrative proceedings, the district court dismissed virtually all of the plaintiffs' claims on the ground that they were barred by res judicata. Judge Goettel concluded that NYSCA had authority to litigate in the state action on the federal plaintiffs' behalf, and adequately had represented their interest. He further found an identity in the causes of action, rejecting the clubs' contention that the state suit differed from the federal action because the latter attacked the statute as applied to it, while the former challenged Local Law 63 on its face.
 
 
 8
 The only exception to this analysis was a selective prosecution claim implied in the complaint. The district court found that the state plaintiff had not raised such a claim, and it allowed the plaintiffs here "leave to replead a selective prosecution claim if a meaningful one can be asserted." University Club, 655 F.Supp. at 1324. That opportunity was, of course, waived by Union League's and the University Club's decision to appeal rather than amend their complaint. See 6 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1483 at 413 (1971). Thereafter, the University Club voted to admit women and withdrew its appeal, leaving only Union League to prosecute the appeal from the district court's judgment.
 
 DISCUSSION
 
 9
 We need not reach Union League's argument that the district court erred in finding an identity between its claims here and those raised by NYSCA in state court, because we conclude that under prevailing precedents of the Supreme Court and of this court, the district court should have abstained.
 
 
 10
 Preliminarily, we reject Union League's contention that the city waived its right to urge abstention by not filing a cross-appeal from the trial court's refusal to abstain. We may affirm the judgment of the district court on any basis that appears in the record, and an appellee may urge us to do so, regardless of whether it took a cross-appeal. See Hankerson v. North Carolina, 432 U.S. 233, 240 n. 6, 97 S.Ct. 2339, 2344 n. 6, 53 L.Ed.2d 306 (1977) ("The * * * respondent may make any argument presented below that supports the judgment of the lower court."); Massachusetts Mutual Life Ins. Co. v. Ludwig, 426 U.S. 479, 480-81, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976) (an argument that was "no more than 'an attack upon the reasoning of the lower court' * * * required no cross-appeal"), quoting United States v. American Ry. Exp. Co., 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924). Here, the city seeks no change in the judgment of the district court; it urges abstention merely as an alternative ground for doing precisely what the district court did: dismiss the complaint.
 
 
 11
 On the merits of abstention, this case is on all fours with Ohio Civil Rights Comm'n. v. Dayton Christian Schools, Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). There, the Supreme Court, after noting that the abstention doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), has been applied "to state administrative proceedings in which important state interests are vindicated", 106 S.Ct. at 2723, determined that a federal court should abstain where a state human rights commission is investigating allegations of sex discrimination and an administrative proceeding relating to those allegations is ongoing. Id. at 2723-24.
 
 
 12
 The proceedings of the Ohio Civil Rights Commission in Dayton Christian Schools were remarkably similar to those of the commission in the instant case. In both cases, there was a finding of probable cause to believe that there had been a violation of laws designed to eliminate gender discrimination. In both cases the administrative posture was the same: the commissions were proceeding with conciliation efforts and adjudication of the charges, when the targets of the investigations brought suit in federal district court to halt the administrative actions because of alleged infringement of constitutional rights. Dayton Christian Schools, 106 S.Ct. at 2721-22.
 
 
 13
 This court recently had occasion to interpret Dayton Christian Schools in Christ the King Regional High School v. Culvert, 815 F.2d 219, 223-24 (2d Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987). Judge Pierce's opinion for the court set forth a three-part test, emanating from Dayton Christian Schools, for determining whether Younger abstention is appropriate. The court must determine "(1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." Id. at 224.
 
 
 14
 The first two elements of the Culvert test easily are satisfied here. As to the first element, here as in Culvert, "the administrative agency in this case has not yet conducted its formal hearing or imposed any sanctions; hence, an ongoing state proceeding exists." Id.
 
 
 15
 As to the second element, the presence of an important state interest, Dayton Christian Schools is directly on point. "We have no doubt that the elimination of prohibited sex discrimination is a sufficiently important state interest to" justify Younger abstention. 106 S.Ct. at 2723.
 
 
 16
 The third element of the Culvert test, the adequacy of the judicial review available to Union League in the state system, is somewhat more complex, but nevertheless supports abstention. As we said in Culvert, "[T]he constitutional issues involved in this case may be decided in an Article 78 proceeding pursuant to the New York Civil Practice Rules and Laws." Culvert, 815 F.2d at 224-25. While constitutional challenges to legislative enactments may not be raised in an Article 78 proceeding to review an administrative action, see Bd. of Educ. v. Gootnick, 49 N.Y.2d 683, 687, 427 N.Y.S.2d 777, 778, 404 N.E.2d 1318, 1319 (1980), New York case law abundantly supports the conclusion that constitutional claims arising from the application of a statute may be raised in an Article 78 petition. See, e.g., id.; R & G Outfitters, Inc. v. Bouchard, 101 A.D.2d 642, 475 N.Y.S.2d 549 (3rd Dep't 1984); Top Tile Bldg. Supply Corp. v. N.Y. State Tax Comm'n, 94 A.D.2d 885, 463 N.Y.S.2d 558 (3rd Dep't 1983).
 
 
 17
 Since the constitutional claims at issue here, which Union League stresses are as-applied rather than the facial challenges asserted in the state court action, may be raised in an Article 78 proceeding, and since in any event the commission would have to petition the New York Supreme Court for enforcement of any cease and desist order it might issue and Union League could raise its claims in that proceeding if not in an Article 78 challenge, there can be no question that adequate judicial review is available in New York for Union League to assert its as-applied constitutional claims.
 
 
 18
 Union League argues, however, that it cannot raise those claims before the commission, because, it claims, the commission has already decided that Union League is in fact a place of public accommodation, and has proclaimed all other factors "irrelevant". This argument fails on two grounds. First, adequate opportunity to raise constitutional claims does not have to include the opportunity to raise them before the administrative tribunal; subsequent judicial review is sufficient. See Dayton Christian Schools, 106 S.Ct. at 2724 ("[I]t is sufficient * * * that constitutional claims may be raised in state court judicial review of the administrative proceeding.").
 
 
 19
 Second, we believe that Union League can, in fact, raise its constitutional claims before the commission. Its claims hinge on Union League's contention that it is in fact a private club enjoying a right of intimate association. It contends that the commission has already decided that only the three factors contained in Local Law 63 (that a club have more than 400 members, provide regular meal service, and regularly receive revenue from nonmembers) are relevant to the issue of whether Union League is "distinctly private", and that the commission has gone still further and already decided that Union League, is, in fact, a place of public accommodation.
 
 
 20
 Neither point of this contention is valid. The commission has, apparently, determined that only the factors listed in Local Law 63 are relevant to determining whether a club is distinctly private within the meaning of that law. This does not mean that it has taken the position that those factors are the only ones relevant to the constitutionality of applying the new definition to Union League. At the least, there is no reason to believe that Union League will be foreclosed from making a record as to those factors (e.g., selectivity of membership) it considers relevant on the constitutional issues so that it may press them on subsequent judicial review as justifying an exemption from application of the law on the basis that it would be unconstitutional to apply it. Cf. NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (organization may be exempted from generally valid state regulation if it can establish unconstitutionality of specific application to it).
 
 
 21
 As to the claim that the commission has prejudged the issue of Union League's status as a place of public accommodation, the simple answer is that the commission merely has made a finding of probable cause; its ultimate determination depends on the hearing it plans to hold. The basic flaw in Union League's position is that it confuses the commission's position on the meaning and scope of Local Law 63 with the separate issue of the constitutionality of that law as applied to Union League. Even if the commission has decided that Local Law 63 establishes a statutory definition of a place of public accommodation and that the factors adverted to by Union League therefore are irrelevant to that statutory question, those factors might still be relevant to the constitutional question. Nothing in any statement or action by the commission indicates that it would not consider those additional constitutional factors, or that it would preclude Union League from making a record of them for subsequent judicial review. If Union League believes it has a legitimate claim to first amendment protection from application of Local Law 63, it will have a full and fair opportunity in state court to so argue.
 
 
 22
 Thus, since there is an ongoing state proceeding implicating important state interests, and since Union League will have a full and fair opportunity to raise its as-applied constitutional claims, abstention under Dayton Christian Schools and Culvert is appropriate.
 
 
 23
 Union League argues finally that because, in its view, the administrative proceeding here is somehow "remedial" rather than "coercive", abstention is inappropriate. For this argument Union League relies on a footnote from the Supreme Court's opinion in Dayton Christian Schools, wherein the Court said:
 
 
 24
 The application of the Younger principle to pending state administrative proceedings is fully consistent with Patsy v. Florida Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), which holds that litigants need not exhaust their administrative remedies prior to bringing a Sec. 1983 suit in federal court. * * * * Unlike Patsy, the administrative proceedings here are coercive rather than remedial * * *.
 
 
 25
 106 S.Ct. at 2723 n. 2. Union League contends that because the commission's proceedings are civil rather than criminal, they are "remedial" rather than "coercive". This argument has no merit. A hearing that may result in civil penalties may well be coercive, as was the case in Culvert. See Culvert, 815 F.2d at 221 (proceedings of state labor relations board could result in finding of an unfair labor practice and cease and desist order). Moreover, the opinion of the Court in Dayton Christian Schools itself explicitly noted that Younger abstention has been extended beyond the criminal context, 106 S.Ct. at 2723 ("We have applied the Younger principle to civil proceedings in which important state interests are involved.").
 
 
 26
 We have little difficulty concluding that the commission proceedings here are coercive in nature; indeed, that is precisely what Union League is concerned about. The "remedial" proceedings relevant to the exhaustion issue in Patsy were those available to a party bringing a Sec. 1983 suit to remedy allegedly unconstitutional state action, and the Court held that exhaustion of the state remedies was not required. See Patsy, 457 U.S. at 516, 102 S.Ct. at 2568. Here, the state proceedings to which we defer are not remedies for Union League, but rather are coercive proceedings directed at Union League.
 
 
 27
 The judgment of the district court is affirmed.