Michael **FRANZA**, Plaintiff,

v.

Robert **ABRAMS**, individually and as Attorney General of the State of New York, New York State Division of State Police, Town of Greenburgh, Greenburgh Police Department, and John Doe, Police Officers of the Town of Greenburgh and of the New York State Police, the identity and number of whom is presently unknown to Plaintiff, as individuals and in their official capacity, Defendants.

No. 88 Civ. 3536 (GLG).

United States District Court,
S.D. New York.

Sept. 27, 1988.

748

Cribari & Fletcher, White Plains, N.Y. (Jere B. Flecher, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Joel Graber, of counsel), for New York State defendants.

Edward J. Rinaldi, Deputy Town Atty., Town of Greenburgh, Elmsford, N.Y., of counsel for Town of Greenburgh defendants.

## OPINION

GOETTEL, District Judge.

The plaintiff in this action challenges the constitutionality of New York Public Health Law ("PHL") §§ 3387(3) and 3388 which provide for seizure and forfeiture of drug paraphernalia. The plaintiff seeks injunctive, declaratory and monetary relief from various state and local departments and officials. Before this court is plaintiff's motion for a preliminary injunction and defendants' cross motions for dismissal of the complaint on abstention grounds and for failure to state a cause of action.

## I. FACTS

In July 1985, in the Town of Greenburgh, Westchester County, the Greenburgh Police ("Municipal Defendants") seized from plaintiff Franza, doing business as Headstone IV, Inc., an inventory of property characterized under section 3387(3) as drug paraphernalia[1] in connection with drug charges brought against the plaintiff. Upon finding that the merchandise contained no residue of any drugs, the Municipal Defendants dismissed all charges against the plaintiff. On December 17, 1985, the Justice Court of the Town of Greenburgh ordered that all the merchandise be returned to the plaintiff.

In contravention of this order, the Municipal Defendants relinquished possession of the merchandise to the United States Attorney's office pending possible indictment of the plaintiff under federal drug paraphernalia laws. Nearly two years later, charges still had not been brought against Franza and, in November 1987, the United States Attorney's office returned the property to the Municipal Defendants. Despite the 1985 order to return the merchandise to the plaintiff, and despite plaintiff's repeated requests for the property, the Municipal Defendants delivered the merchandise to the State Attorney General's office ("State Defendants") in May 1988. The State Defendants took custody of the property pursuant to PHL §§ 3387(3) and 3388.

On May 27, 1988, plaintiff commenced suit in this court seeking: (1) an injunction ordering the return of the merchandise and preventing any future interference with the same; (2) a declaration that PHL §§ 3387(3) and 3388 are unconstitutional and unenforceable; and (3) monetary damages pursuant to 42 U.S.C. §§ 1982 and 1983 for the prolonged deprivation of the property. Less than one month later, the State Defendants commenced a forfeiture action in the State Supreme Court of Westchester County[2] seeking: (1) a judicial de-

---

1. Section 3387(3) defines drug paraphernalia as "any raw material, product, container or equipment of any kind which is used, or intended for use, in manufacturing, distributing, dispensing or administering a controlled substance." The State Police seized an extensive inventory of such items, valued at approximately $500,000.

2. Edna Reisner, a co-defendant in the state action, was served with a summons with notice on June 30, 1988. Michael Franza was not served with a summons until September 7, 1988. Service upon Franza was delayed due to a misunderstanding by the state court plaintiffs that Michael Franza was still married to Edna Reisner and therefore service on Reisner was suffi-

cient to obtain jurisdiction over Franza. Thereafter, service on Franza was delayed by a further misunderstanding that Franza's attorney would accept service on behalf of Franza.

At the time of this motion, Franza has not yet entered an appearance in the action and his time to do so has not yet expired. Edna Reisner has appeared through counsel. Although Franza has not yet appeared in the action, under New York Civil Practice Law and Rules, § 304 (McKinney 1972), the action is properly commenced and jurisdiction acquired by service of the summons. Therefore, Franza is properly a party in the state forfeiture action.

termination of forfeiture of the seized merchandise pursuant to PHL §§ 3387(3) and 3388; (2) a judgment and order pursuant to New York General Business Law ("GBL") § 853 restraining plaintiff from further offering to sell the paraphernalia and imposing civil penalties thereunder; and (3) a judgment and order restraining plaintiff from further engaging in fraudulent conduct in violation of New York Executive Law § 63(12) respecting the sale of prescription drugs.[3]

The plaintiff has moved this court for a preliminary injunction restraining the defendants from transferring, disposing, or forfeiting any of plaintiff's property, or seeking to do any such acts. The defendants have cross-moved for dismissal of the complaint on abstention grounds and for failure to state a cause of action. Because we will abstain in this action, it is not necessary for us to reach the merits of plaintiff's motion or defendant's cross-motion to dismiss.

## II. DISCUSSION

As a general rule, the federal courts are under a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The Supreme Court, however, has outlined situations in which it is appropriate for a federal district court to stay its hand to preserve notions of comity and federalism. *See, e.g., Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The defendants herein contend that abstention is appropriate in this case under all of the foregoing doctrines. Finding elements of *Younger,, Colorado River, Burford* and *Pullman* abstention doctrines present in

this case, we will dismiss the plaintiff's action in deference to the state court system.

Under the abstention doctrine created in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). Although *Younger* was decided in response to an ongoing state criminal proceeding, the Court has extended the doctrine to civil and administrative proceedings when three conditions are met: (1) important state interests are at stake; (2) state procedures are available to the federal plaintiff to raise his federal claim in state court; and (3) there are ongoing state proceedings. *See Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

The Second Circuit has been rapidly expanding the use of *Younger* abstention in federal § 1983 actions where there are correlative proceedings in state court. *See University Club v. City of New York*, 842 F.2d 37 (2d Cir.1988); *Christ the King Regional High School v. Culvert*, 815 F.2d 219 (2d Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 102, 48 L.Ed.2d 63 (1987). In these cases, the court applies the three-part test originated in *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986): (1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the state pro-

---

**3.** Included in the seized merchandise were various imitation drugs and powders constituting the basis for the State's last count against the plaintiff.

ceeding. *See University Club*, 842 F.2d at 40; *Culvert*, 815 F.2d at 224.

The instant case, while not a typical one, falls within the parameters of abstention under *Younger* and *Dayton.* The first requirement of the *Dayton* test, that there be an ongoing state proceeding, is satisfied by the forfeiture action currently pending in state court. It is immaterial that the state forfeiture action was commenced after the plaintiff instituted this action in federal court. Rather, abstention is appropriate so long as "state court proceedings are initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984) (quoting *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975)). In this case, the state action was instituted less than one month after filing of the federal action,[4] and before any action had been taken in federal court. There have been virtually no proceedings in state court and this wave of motions and cross-motions is the only progress that has been made in federal court. The timing of the actions, therefore, is not a bar to abstention.

The second requirement, that the case implicate an important state interest is also met. The pending state court action directly involves the interpretation and enforcement of New York State's anti-paraphernalia laws. The state has a vital interest in discouraging and repressing commerce in the instrumentalities of drug abuse and addiction. Drug abuse is one of the most pressing problems facing our society today. One look at the streets of our cities, our schoolyards and our workplaces tells the tale of the devastating effects of drug use upon children and the general population. The New York State Legislature has established a scheme of laws to control and eliminate the means of drug use in an effort to curtail the rapidly escalating problem of drug abuse. In today's world, it is difficult to imagine a more urgent state interest.

Finally, state procedures are clearly available for raising the plaintiff's constitutional claims before state judicial tribunals. State courts are capable of hearing and are competent to decide federal constitutional claims. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987) ("So long as [the federal] challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state court litigation mandates that the federal court stay its hand."). Moreover, state courts have concurrent jurisdiction with the federal courts over § 1983 actions. *See Maine v. Thiboutot,* 448 U.S. 1, 10–11, 100 S.Ct. 2502, 2507–08, 65 L.Ed. 2d 555 (1980). Even if the litigant has not raised his federal claims in the state court proceedings, "a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.,* 107 S.Ct. 1519, 1528 (1987). Thus, the plaintiff will be able to raise all his federal claims in the state court proceeding and will have the state and federal appellate processes available for judicial review. Because this case meets the requirements for *Younger* abstention under both the Supreme Court and Second Circuit tests, it is appropriate for this court to stay its hand in this action.

The case for abstention is fortified by the existence of elements of other federal abstention doctrines. "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.,* 107 S.Ct. 1519, 1526 n. 9 (1987). Although this case does not fit squarely within the parameters of any one of the remaining abstention doctrines, it

---

**4.** Although the plaintiff was not served until September 7, 1988, the defendants instituted the action by service of a summons with notice against Edna Reisner in June 1988. An attempt was made at that time to serve Franza but service was not effected until early September 1988. *See supra,* note 2.

presents concerns that further militate in favor of abstention by this court.

The corresponding actions in this case pose a threat of duplicitous litigation. In this action, the plaintiff challenges the constitutionality of PHL §§ 3387(3) and 3388 under both the United States and New York Constitutions. In defense of the state forfeiture action, the plaintiff herein will necessarily raise the same constitutional challenges. "[S]ince a judgment by either court would ordinarily be res judicata in the other, the existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first [which would be] prejudicial, to say the least, to the possibility of reasoned decisionmaking by either forum." *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 567, 103 S.Ct. 3201, 3214, 77 L.Ed.2d 837 (1983). Moreover, the actions presented here and in state court concern title to the seized property. As stated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), one of the policies of abstention is to "avoid[ ] the generation of additional litigation through permitting inconsistent dispositions of property." *Id.* at 819, 96 S.Ct. at 1247. Maintenance of virtually identical suits in two forums runs contrary to the notion of wise judicial administration that goes to the heart of *Colorado River* abstention. Although this action does not present the "exceptional circumstances" foreseen by *Colorado River*, the threat of duplicative and inconsistent litigation is an additional factor counseling towards abstention in this case.

This case also has characteristics of *Burford* abstention. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In its drug paraphernalia statute, New York has created " 'a comprehensive and detailed regulatory scheme' in the field of 'drug-related paraphernalia' ". *Dougal v. County of Suffolk*, 102 A.D.2d 531, 477 N.Y.S.2d 381, 382 (App.Div.2d Dept.1984), *aff'd*, 65 N.Y.2d 668, 491 N.Y.S.2d 622, 481 N.E.2d 254 (1985). The federal government's intention to relegate the duty of

drug paraphernalia control to the states is evidenced by their creation of a Model State Drug Paraphernalia Act. In so doing, Congress sent the message to the states that the problem of paraphernalia should be confronted by legislative and law enforcement action of the several states. Consequently, it is best left to the states to determine the constitutionality of their statutory schemes. "Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed ... ultimate review of the federal questions is fully preserved here." *Burford v. Sun Oil Co.*, 319 U.S. 315, 334, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424 (1943). The statutory scheme established by the PHL provides for judicial review through the mechanics of the state and federal appellate systems. Deferring to the state action in this case permits the state courts to iron out their policies and laws without compromising the plaintiff's right to review of his federal claims. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976) (Abstention appropriate when the "exercise of federal review of the question ... would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."). Although this is not a case where the statutory scheme is so comprehensive and exclusive as to warrant abstention on its face, the nature of the statute at issue, and the strong state policy behind it, further counsel this court to stay its hand.

Finally, this case presents elements of *Pullman* abstention. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under this doctrine, abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). The case at bar

does not clearly fit into the *Pullman* framework for abstention[5] because the federal constitutional issue is not logically dependent on the state law issues. Rather, the federal and state constitutional challenges are alternative grounds for decision. Moreover, the state law at issue is not sufficiently ambiguous to justify abstention on these grounds. However, the constitutionality of PHL §§ 3387(3) and 3388 is currently being challenged in the Appellate Division of the Supreme Court of the State of New York, First Judicial Department in *Stallone v. Abrams* (Index No. 2791/86). A decision in *Stallone* regarding the paraphernalia statute may well obviate this federal action. In the interests of comity and federalism, it would be wise for this court to await a state court interpretation of the statute before assessing the statute on federal constitutional grounds. *See Moore v. Sims*, 442 U.S. 415, 429–30, 99 S.Ct. 2371, 2380–81, 60 L.Ed.2d 994 (1979). That there is a currently pending state court challenge to the statute, therefore, militates in favor of abstention.

### III. CONCLUSION

This is a case where the sum of the parts is greater than the whole. The Supreme Court has recently guided the federal courts to view abstention as a fluid doctrine, rather than one confined to rigid requirements. In this manner, a court may consider facts that, while not warranting abstention alone, counsel the court to stay its hand when examined in the aggregate.

In this action, there is a correlative state court proceeding which can adequately address all of the plaintiff's claims. The plaintiff will not be prejudiced by being forced to raise all his claims in state court, where he will inevitably defend the action on the same grounds. Moreover, interests of wise judicial administration and comity command that this court refrain from interfering in this action.

Once the decision to abstain has been made, it is incumbent upon the court to determine whether to dismiss the federal suit or merely stay the proceedings until the state court action is concluded. Under the rule of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the appropriate course for the federal court is dismissal of the federal suit. *See Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973) ("*Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts."). Because the primary rationale for our decision in this case is *Younger* abstention, we will dismiss this case in favor of the ongoing state proceeding. The additional support for abstention provided by the other doctrines does not require a different result.[6] Therefore, under the guidance of *Younger v. Harris* we will dismiss the federal action.

Accordingly, defendant's cross-motion to dismiss is granted. All remaining motions are denied.

SO ORDERED.

---

5. The Second Circuit test for *Pullman* abstention requires "that the state statute be unclear or the issue of state law be uncertain, that resolution of the federal issue depend upon the interpretation to be given to the state law, and that the state law be susceptible of an interpretation that would avoid or modify the federal constitutional issue." *McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir.1976) (citations omitted).

6. Dismissal of the federal suit is an appropriate remedy under both *Burford, see Moos v. Wells,* 585 F.Supp. 1348, 1350 (S.D.N.Y.1984), and *Col-* *orado River* abstention doctrines. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983) ("[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses."). Although *Pullman* abstention requires a stay of the federal court action, *see id.* at 28 n. 37, 103 S.Ct. at 943 n. 37, this case may not properly be characterized as one for *Pullman* abstention. *See supra.*