**B.A.M. BROKERAGE CORP., et al., Plaintiffs,**

v.

**The STATE OF NEW YORK, et al., Defendants.**

No. 88 Civ. 5714 (RWS).

United States District Court,
S.D. New York.

Nov. 22, 1988.

Weg and Myers, P.C., New York City (Dennis T. D'Antonio, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (August L. Fietkau, Asst. Atty. Gen., of counsel), for defendants.

OPINION

SWEET, District Judge.

Plaintiff B.A.M. Brokerage Corp., Amy Litsky and about 100 other plaintiffs (the "Brokers") have moved pursuant to Fed.R. Civ.P. 65 to enjoin defendants the State of New York, James P. Corcoran, the Superintendent of Insurance, and five other named defendants in the Insurance Department of the State of New York (the "Department") from issuing administrative citations and conducting disciplinary hearings involving the Brokers. The Department has moved under Fed.R.Civ.P. 12(b) to dismiss the complaint on the grounds of abstention. For the reasons set forth below, both motions are denied.

*Prior Proceedings*

The Brokers moved for injunctive relief by order to show cause signed by the Part I Judge on August 16, 1988. Temporary relief was denied. The Department moved by order to show cause signed by the Part I Judge on September 1, 1988. None of the

parties requested an evidentiary hearing. The motions were argued on September 7, 1988 and were finally submitted on September 13, 1988.

This action is a sequel to *American Motor Club, Inc. v. Corcoran*, 644 F.Supp. 862 (S.D.N.Y.1986) ("*Corcoran I*") in which an opinion was rendered on September 25, 1986 enjoining the Department from revoking or threatening to revoke the Brokers' licenses in the absence of a declaration by a state court on the legality of the conduct of plaintiff American Motor Club, Inc. ("AMC"). Since that opinion, much has happened as set forth in the complaint here.

*The Pleadings*

Plaintiffs allege that the Department's conduct constitutes a violation of 42 U.S.C. § 1983 in that the Department has predetermined the issues between the parties in such a way as to constitute a violation of the Brokers' due process rights. According to their complaint, the Brokers provide services to consumers unable to purchase motor vehicle insurance against collision, fire and theft because of the expense of such insurance, or because of the residence or driving records of the applicants.[1] AMC offered to repair damage to automobiles at its repair shops for an annual membership fee of approximately one-third to one-half of the cost of the described insurance premiums. The Brokers sold these AMC memberships at a greater percentage commission than that granted by the Department with respect to insurance.

Further, according to the Brokers, the Department initially determined that the AMC plan did not constitute insurance. Subsequently, the Department reached a contrary conclusion and proceeded in state court, claiming that the AMC plan violated the New York Insurance Law. The state court determined that AMC was conducting insurance business and enjoined it from further operations. *People v. American Motor Club, Inc.*, Index No. 43148/85, N.Y. Sup.Ct., County of New York, January 14, 1987 ("*Corcoran II*").

Notwithstanding the Department's prior determination that plaintiffs violated New York Insurance Law by the sale of AMC memberships, the Department has sought to compel the Brokers to attend "compulsory conferences" and to require the Brokers to agree to a $100 fine per membership sold or to a flat fine, to make restitution on all claims, and to admit to violating the Insurance Law of the State of New York (Complaint ¶ 24). Failure to appear at the conferences and to agree to the fines will result in citations to appear at license revocation hearings, some of which have already been served upon certain of the Brokers (Complaint ¶ 25).

The Brokers allege that the defendants have predetermined that the plaintiffs violated the insurance law by the sale of AMC memberships, that they are "crooks," and that they deserve to have their licenses revoked as being "untrustworthy," a ground set forth in the New York Insurance Law for revocation of licenses, all as a result of their involvement with AMC contracts. (Complaint ¶ 23).

*Standard for Injunctive Relief—Irreparable Injury*

■ The standards to be met before preliminary injunctive relief will be issued are well established and have been cited by the parties and in *Corcoran I.* The threshold requirement is irreparable injury.

In *Corcoran I,* irreparable injury was found to exist where the Brokers were threatened with revocation of their licenses prior to the required state determination that their conduct and that of AMC violated state law. The authorities supporting that proposition were cited in *Corcoran I.* Now, by virtue of the decision of the Honorable Milton H. Richardson in *Corcoran II, supra,* the state process has determined that AMC's conduct violated the Insurance Law.

The Department has not yet held any hearings concerning the Brokers, according to the complaint, and the Department challenges factually the Brokers' conclusory allegation that the issues in the administra-

---

1. These consumers have not been able to obtain coverage from the New York Automobile Insurance Plan (the Assigned Risk Pool) because of the expense of the premiums charged.

tive hearings have been predetermined. While there are some indications of predispositions arising out of the facts alleged, in the absence of any administrative action by the Department, the Brokers have yet to establish their irreparable injury.

Although the threat of injury is alleged, the Brokers have not alleged any specifics concerning lost business, lost opportunity, or damage to reputation or occupation. The law requires that some realistic evaluation of the possibility of injury be proffered, particularly in the face of the state court determination that AMC's activities violated the state regulatory system. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979); *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45–6 (2d Cir.1983); *Consol. Brands, Inc. v. Mondi*, 638 F.Supp. 152 (E.D.N.Y.1986). In the absence of predominating proof of predetermination, the Department's effort to obtain consent decrees and its issuance of citations do not constitute irreparable injury. In the absence of irreparable injury, preliminary injunctive relief is inappropriate, and is hereby denied.

*Abstention*

■ The Department seeks to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b), on the grounds of abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) or *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). As the United States Supreme Court has noted, abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The tension between the exercise of constitutional rights in the federal courts and state court proceedings has been established by the authorities cited by both the Brokers and the Department. Under the circumstances established by the pleadings here, dismissal of the complaint alleging a violation of constitutional rights and predetermination of issues is not appropriate.

Abstention is warranted under *Burford* "where it is prudent for a federal court to refrain from interfering in cases presenting state law issues relating to complex state regulations where the federal court decsion may disrupt important state policies." *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 599 (2d Cir.1988). Although the court has applied *Burford* to issues relating the the enforcement of New York Insurance Law, *Law Enforcement Insurance Co. v. Corcoran*, 807 F.2d 38 (2d Cir.1986), this case does not present a "difficult issue of state law, the resolution of which will have a significant impact on important state policies ...," *Alliance*, 854 F.2d at 599, nor does this case "involve federal courts in supervising, interrupting, or meddling in state policies by interfering in state regulatory matters." *Id.* at 601. Therefore, *Burford* abstention is not appropriate in this case.

The Court of Appeals for the Second Circuit has recently considered the doctrine of abstention. In *University Club v. City of New York*, 842 F.2d 37 (2d Cir.1988) ("*University Club*"), the Honorable George Pratt examined the implications of *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) and the Circuit's view of the requirements for abstention as delineated in *Christ the King Regional High School v. Culvert*, 815 F.2d 219 (2d Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987). The Court reaffirmed the *Culvert* criteria for abstention:

The court must determine (1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding.

*University Club v. City of New York*, 842 F.2d at 40 (quoting *Culvert*, 815 F.2d at 224).

In this case, as in *University Club*, the first two Culvert factors have been established: state proceedings are in progress, and the state has an important interest in

the enforcement of the rules and regulations of the Department. At issue in this case is the third element of the test enunciated in *Culvert*—the adequacy of the judicial review of the Brokers' constitutional claims. Giving the benefit of any doubt to the challenged pleading, *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the complaint alleges a predetermined administrative process which, if proven, would violate the Brokers' right to due process. *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

The Department seeks to avoid the effect of *Gibson v. Berryhill*, by reference to the availability of a CPLR Article 78 proceeding in state court in the event of an unfavorable administrative determination. Such a proceeding was the basis upon which the Court of Appeals affirmed the dismissal of the plaintiff's § 1983 claim in *Campo v. New York City Employees' Retirement Sys.*, 843 F.2d 96 (2d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 220, 102 L.Ed.2d 211, stating:

> In the light of these authorities we hold that the State of New York, through Article 78, offered to Mrs. Campo a due process hearing at a meaningful time and in a meaningful manner.

*Id.* at 103.

However, in *Campo*, what was at stake was a challenge not to the process itself, but to a determination as to whether Mrs. Campo possessed a property interest in her husband's pension. Here, the nature of the constitutional deprivation alleged is that no fair administrative process is available to the Brokers because of predetermination. To condemn the Brokers to a predetermined administrative process with its attendant expense and potential damage would violate their constitutional rights, whether or not the results could be remedied through an Article 78 proceeding. *See Gibson v. Berryhill*, 411 U.S. 564, 575 n.

14, 93 S.Ct. 1689, 1696 n. 14, 36 L.Ed.2d 488 (1973) (state administrative remedies have been deemed inadequate "where the state administrative body was found to have predetermined the issue before it.").

Moreover, in *Campo v. New York City Employees Retirement System*, federal jurisdiction was extinguished because state procedures existed where the § 1983 plaintiff could raise her constitutional claims. However, there is no requirement that state remedies be exhausted. *Texaco v. Pennzoil*, 784 F.2d 1133, 1144 (2d Cir.1986) (citing *Patsy v. Florida Board of Regents*, 457 U.S. 496, 506, 102 S.Ct. 2557, 2562, 73 L.Ed.2d 172 (1982)), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).[2] It thus appears that something may be left to a § 1983 plaintiff even in the face of the existence of state remedies. Predetermination, if established, constitutes such a cause.

The Department also attacks the complaint as deficient for failure to allege specific allegations of fact indicating a deprivation of civil rights, and cites *Koch v. Yunich*, 533 F.2d 80 (2d Cir.1976) to support its argument. However, the complaint directly attributes predetermination to the named defendants and alleges that the predetermination was reached under the direction of the Superintendent of the Department. Given the history of this litigation, the past relationship of the parties and the relaxed standards of notice pleading, the complaint adequately specifies the allegation of constitutional deprivation.

The motion to dismiss the complaint is, therefore, denied.

It is so ordered.

---

**2.** Indeed, in *Alliance of American Insurers v. Cuomo*, 854 F.2d 591 (2d Cir.1988), although plaintiffs had not pursued their case in state courts, the Court of Appeals for the Second Circuit held that abstention was not warranted.